**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| LESLIE A. SANTIAGO, | ) | |
| | ) | CASE NO. 1:13-cv-01216 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff Leslie A. Santiago ("Santiago") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying Santiago's claim for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

**I. Procedural History**

On July 13, 2009, Santiago filed an application for POD and DIB alleging a disability

onset date of June 12, 2008.  Her application was denied both initially and upon reconsideration.  Santiago timely requested an administrative hearing.  (Tr. 10.)

On September 20, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Santiago, represented by counsel, and an impartial vocational expert ("VE") testified.  On October 24, 2011, the ALJ found Santiago was able to perform a significant number of jobs in the national economy and, therefore, was not disabled.  (Tr. 20.)  The ALJ's decision became final when the Appeals Council denied further review.

## II.  Evidence

*Personal and Vocational Evidence*

Age thirty-eight (38) at the time of her administrative hearing, Santiago is a "younger" person under social security regulations.  *See* 20 C.F.R. § 404.1563(c).  (Tr. 19.)  She has a limited education and past relevant work as a hand packager, machine packager, and production assembler.  (Tr. 19-20.)

*Relevant Hearing Testimony*

The ALJ posed a series of hypothetical questions to the VE, asking him to assume in each that the individual was the same age and had the same education, and work experience as Santiago.  (Tr. 66.)  In the first hypothetical, he asked the VE to also assume the individual was obese; could perform a limited range of light work with no climbing of ladders, ropes, or scaffolds and only occasional climbing of ramps and stairs; frequent handling and fingering bilaterally; simple, routine, repetitive tasks; and, frequent contact with the general public.  (Tr. 66.)  The VE testified that such an individual would not be able to perform Santiago's past relevant work as she performed it, but could perform the following jobs: electronics worker,

inspector and hand packager, table worker, cashier II, and final assembler. (Tr. 66-67.) In the second hypothetical, the ALJ simply changed the exertional level from light to sedentary. (Tr. 68.) The VE stated that such an individual could still perform the jobs of table worker, final assembler, and half the cashier II jobs. (Tr. 68.)

Santiago's attorney asked the VE whether the hypothetical individual could perform any jobs if limited as described by treating psychiatrist Lorraine Christian, M.D., in Exhibit 16F, which included numerous marked limitations.[1] (Tr. 68.) The VE testified that an individual limited as described by Dr. Christian would have a difficult time maintaining or retaining employment. (Tr. 69.)

### III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[2]

---

[1] Among her limitations, Dr. Christian found that Santiago was markedly limited in her ability to interact appropriately with the general public. (Tr. 884-885.)

[2] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Santiago was insured on her alleged disability onset date, June 12, 2008 and remained insured through the date of the ALJ's decision. (Tr. 12.) Therefore, in order to be entitled to POD and DIB, Santiago must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

### IV. Summary of Commissioner's Decision

The ALJ found Santiago established medically determinable, severe impairments, due to anxiety, carpal tunnel syndrome, and obesity. (Tr. 12.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 14.) Santiago was found incapable of performing her past relevant work (Tr. 19), but was determined to have a Residual Functional Capacity ("RFC") for a limited range of sedentary work. (Tr. 16.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Santiago was not disabled. (Tr. 20.)

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied.

---

performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

*See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.  *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if

5

supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  Analysis

*Treating Physician Rule and RFC Finding*

In her first assignment of error, Santiago argues the ALJ failed to properly evaluate the medical opinions offered by her treating physician, Kancherla Srinivasa Rao, M.D. (ECF No. 14 at 3-4.) As this Court understands Santiago's argument,[3] she maintains that the ALJ effectively rejected, but claimed to ascribe "great weight" to certain portions of Dr. Rao's opinion. *Id*. Alternatively, Santiago's brief could be also be construed as arguing that the RFC and resulting hypothetical questions were not supported by substantial evidence, because they omitted certain

---

[3] Santiago's first assignment of error is only one page in length and the brief omits any discussion of the medical record. Santiago's other assignments of error are even less developed.

functional limitations that the ALJ credited as valid. The Commissioner's brief on this point is comprised entirely of boilerplate law and makes no attempt to apply the law to this case. (ECF No. 15 at 12-14.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 2006 WL 2271336 at * 4 (6th Cir. Aug. 8, 2006); 20 C.F.R. § 404.1527(c)(2). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 2006 WL 2271336 at * 4 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[4]

If the ALJ determines a treating source opinion is not entitled to controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating

---

[4] Pursuant to 20 C.F.R. § 404.1527(c)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

7

source's medical opinion and the reasons for that weight.'" *Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at * 5). The purpose of this requirement is two-fold. First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id*. (quoting *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004)). Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544. Because of the significance of this requirement, the Sixth Circuit has held that the failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

Nevertheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406. The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). According to 20 C.F.R. § 404.1527(d)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's

statement that one is disabled.  "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."  *Id*.  It is the Commissioner who must make the final decision on the ultimate issue of disability.  *Duncan*, 801 F.2d at 855;  *Harris*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

The medical record contains the following evidence from Kancherla Srinivasa Rao, M.D., that was cited by the parties or the ALJ.[5]

On November 28, 2008, Dr. Rao noted that Santiago had been under her psychiatric care, was unable to return to work, and that her ability to return to work would be re-evaluated at the next appointment.  (Tr. 393, 397, 400.)  Santiago had reported no improvement and continued to experience panic attacks and depression.  (Tr. 258.)  "No improvement" was noted towards her goal of psychiatric stability.  *Id*.

In a claim form provided to Santiago's insurance carrier completed on January 12, 2009, Dr. Rao reported that Santiago suffered from panic disorder with agoraphobia.  (Tr. 405.)  Her symptoms included panic attacks, low motivation, post-trauma memories, and depressed mood. *Id*.  Dr. Rao assigned a current Global Assessment of Functioning ("GAF") score of 58.[6]  *Id*.

---

[5] The ALJ mistakenly cites treatment notes of Dr. Rao as coming from two separate sources.  The ALJ discusses certain evidence from "Dr. Srinivasa" and then refers to "[a]nother psychiatrist, Kancheri Roa, M.D. [sic]."  (Tr. 16-17.)  The "two" are one and the same.

[6] The GAF scale reports a clinician's assessment of an individual's overall level of functioning.  *Diagnostic & Statistical Manual of Mental Disorders*, 32-34 (American Psychiatric Association, 4th ed revised, 2000) ("DSM-IV").  An individual's GAF is rated between 0 - 100, with lower numbers indicating more severe mental impairments. A GAF score between 51 - 60 denotes "moderate symptoms (*e.g*. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (*e.g*. few friends, conflicts with peers or co-workers)."  It bears noting that a recent update of

Santiago's treatment consisted of "counseling, psychiatric [prescription drugs], and partial hosp. program." *Id*.  According to Dr. Rao, Santiago's "anxious and depressive thoughts are too distracting and intrusive and she is unable to focus on work at this time."  (Tr. 406.)  She reported that once Santiago's mood stabilized, she would be able to perform part-time work, but should not start full-time work "right away."  *Id*.  Under "limitations," Dr. Rao indicated that Santiago is unable to "work directly w/ people a lot – i.e. public/customer service positions."  *Id*.

On March 5, 2009, Dr. Rao noted that Santiago had been under her care since October of 2008, had not made much improvement despite treatment, was unable to return to work with others, and was not expected back to work until June 8, 2009.  (Tr. 268, 429.)  In another form submitted to Santiago's insurance carrier the same date, Dr. Rao explained that Santiago suffered from major depression, recurrent and moderate; panic disorder with agoraphobia; and, post-traumatic stress disorder.  (Tr. 417.)  Dr. Rao further found that Santiago could not work in any capacity because she had not shown much improvement despite treatment with medications and both individual and group psychotherapy.  *Id*.

The essence of Santiago's argument is that the ALJ purported to ascribe great weight to Dr. Rao's limitations with respect to her inability to deal with others.  In the decision, the ALJ observed that "Dr. Srinivasa [Rao] previously indicated that the claimant may be able to return to work and **should not have significant contact with others**."  (Tr. 17) (emphasis added).  Santiago points out that the RFC, however, allows her to have "frequent contact with the general public."  (Tr. 16.)  Pursuant to Social Security Ruling ("SSR") 83-10 (1983), "'[f]requent' means

---

the DSM eliminated the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice."  *See Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) at 16 (American Psychiatric Association, 5th ed., 2013).

occurring from one-third to two-thirds of the time." Thus, the ALJ necessarily found that Santiago could interact with the general public for up to six hours in an eight-hour workday. Furthermore, the RFC contains no restrictions as it relates to Santiago's ability to interact with co-workers. Santiago maintains that this restriction does not adequately account for Dr. Rao's limitations. In essence, she argues that up to six hours of contact with the general public and unlimited contact with co-workers contradicts the ALJ's purported acceptance of Dr. Rao's opinion that there should be no significant contact with others. This Court agrees. Dr. Rao expressly indicated that Santiago is unable to "work directly w/ people a lot." (Tr. 406.) While the terms "a lot" or "significant" are somewhat vague and open to interpretation, up to six hours of interaction with the general public cannot reasonably be characterized as being consistent with the limitations set out by Dr. Rao.

Furthermore, while not argued by Santiago, Dr. Rao's limitations regarding social interaction also appear to be consistent with Santiago's psychiatrist, Lorraine Christian, M.D., who found that Santiago had marked limitations in her ability to interact appropriately with the general public. (Tr. 884-885.) While the ALJ found that Dr. Christian's opinion concerning Santiago's abilities to maintain concentration, persistence, or pace was not supported by the evidence,[7] the ALJ does not discuss the weight ascribed to Dr. Christian's opinion regarding Santiago's limitations in the area of social interaction. Because the ALJ expressly found only moderate limitations in social functioning, the inescapable conclusion is that the ALJ rejected Dr. Christian's opinion without explanation. (Tr. 18.)

---

[7] The rejection of this opinion is primarily based on Santiago having completed a number of forms for her disability application. (Tr. 18.)

The ALJ essentially rejected the opinions of two treating sources. While the ALJ claims that he gave great weight to Dr. Rao's opinion, the RFC does not contain functional limitations that reasonably correspond to the opinion. Moreover, this Court cannot conduct a meaningful review where an opinion that is claimed to have been accepted is actually rejected. In addition, the decision also fails to explain why Dr. Christian's opinions concerning Santiago's limitations in social interaction were also rejected.

Accordingly, the Court finds the ALJ failed to provide "good reasons" for rejecting medical opinions of Santiago's treating sources regarding her functional limitations. The Court, therefore, remands this matter to afford the ALJ an opportunity to sufficiently evaluate and explain the weight ascribed to the limitations assessed by Dr. Rao and Dr. Christian. As the Court is remanding this case for further proceedings, in the interests of judicial economy, the Court declines to consider Santiago's remaining assignments of error.[8]

### VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner is VACATED and the case

---

[8] Medical consultant Alice Chambly, Psy. D., opined that Santiago was limited to work that involved only superficial contact with others. (Tr. 487.) The ALJ also ascribed "great weight" to this opinion. (Tr. 17.) However, the RFC and corresponding hypothetical limited only the frequency of the contact Santiago could have with the general public and is devoid of any limitations concerning the character of that contact. On remand, the ALJ should clarify which portion of Dr. Chambly's limitations are credible and incorporate such limitations into the RFC and hypothetical. In fashioning a hypothetical question for a VE, the ALJ is required to incorporate only those limitations that he accepts as credible. *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007) (*citing Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993)). However, where the ALJ relies upon a hypothetical question that fails to adequately account for all of the claimant's credible functional limitations, it follows that a finding of disability is not based on substantial evidence. *See Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994).

12

is REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this opinion.

      IT IS SO ORDERED.

                                              /s/ Greg White
                                          U.S. Magistrate Judge

Date: March 7, 2014